**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Martin ENRIQUEZ–ESTRADA,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Donald Roy SELIG, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jorge ENRIQUEZ–GALAZ,**
**Defendant–Appellant.**

**Nos. 91–10613, 91–10614 and 92–10066.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Decided July 7, 1993.

Fernando Fajardo, Tucson, AZ, for defendant-appellant Enriquez–Estrada.

Thomas G. Hippert, Dardis & Hippert, Tucson, AZ, for defendant-appellant Selig.

J. Bert Vargas, Tucson, AZ, for defendant-appellant Enriquez–Galaz.

David A. Kern, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: FARRIS, POOLE, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Defendants Martin Enriquez–Estrada (Estrada), Jorge Enriquez–Galaz (Galaz), and Donald Selig were charged with conspiracy and possession with intent to distribute mari-juana in violation of 21 U.S.C. §§ 841 and 846. A jury convicted them on all counts. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 (1988). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I. Facts

On February 18, 1991, Phoenix area DEA agents met with an informant in Tucson, Arizona. The informant had on two occasions during the preceding two days informed the agents that a three-ton load of marijuana had been moved to a stash house in the Tucson area. Another informant corroborated this information and added that there would be three men with the marijuana. After the meeting, the informant accompanied the agents to a residence at 918 Calle Catavinos, which he claimed to be the stash house.

One of the DEA Agents, Agent Rodriguez, left to obtain a search warrant. Three other agents, Agent Schrimpf, Agent Gulick, and Agent Hough, remained to watch the premises. During their surveillance, a red Pontiac Trans Am entered the 918 Calle Catavinos property. Two males, later identified as Estrada and Galaz, were in the car.

Soon thereafter, a silver Pontiac Grand Prix containing Estrada and a young woman exited the property. Part of the surveillance team followed the silver Pontiac and, upon receipt of information that a warrant had been obtained, radioed ahead and had the car stopped. Estrada was taken into custody.

Agent Rodriguez advised Estrada of his rights. Estrada then chose to speak briefly with the agents, informing them that no guns were present at the residence, but that two males, whom he identified by name as "Jorge and Donald," were. When asked if anything else was in the house "that would cause them any legal problems," Estrada replied "marijuana." When asked what the two people at the house were doing, he replied "taking care of the marijuana." Estrada then refused to say anything further, and Agent Rodriguez left to join the units converging on the 918 Calle Catavinos residence.

Agents assigned to secure the back yard of the residence arrested Galaz while he was leaning into the previously seen red Pontiac Trans Am. Agents who entered the residence arrested Selig. They also testified that the odor of marijuana was so strong that it could be smelled several yards away from the residence.

Agents discovered thirty to thirty-five bales of marijuana wrapped in cellophane in each of two bedrooms in the residence. Wrapping material, open bags of marijuana, a .22 caliber Derringer, and various other paraphernalia were scattered throughout the residence. Altogether, agents seized 1,001 pounds of marijuana.

On top of the marijuana stacked in the master bedroom, agents found a drug ledger that indicated that the residence was being used as a major warehouse for marijuana. Along with this ledger, agents seized personal correspondence of Selig, personal correspondence of Estrada, a cable television bill sent to Estrada at the 918 Calle Catavinos address, and bills of sale made out to Selig for both the silver Pontiac Grand Prix and the red Pontiac Trans Am.

On March 20, 1991, all of the defendants were indicted. After arraignment, the defendants filed various pre-trial motions, including motions to sever and motions to suppress post-arrest statements, namely Estrada's identification of "Jorge and Don" as the men "taking care of the marijuana." The district court denied both motions, ruling that Estrada's statement properly could be sanitized with appropriate instructions.

On September 23, 1991, trial commenced. On September 25, 1991, a jury convicted the defendants on all counts. The defendants filed a motion for new trial and a motion for judgment of acquittal, both of which were denied. They now appeal.

## II. Discussion

### A. Sufficiency of the Evidence

■ The defendants contend that the evidence is insufficient to support their convictions for conspiracy and possession with intent to distribute marijuana. In considering a challenge to the sufficiency of the evidence,

we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Medina*, 940 F.2d 1247, 1250 (9th Cir.1991). Moreover, we may not substitute our judgment for the jury's. "It is not necessary that [we] could find the defendant guilty. Rather, it is sufficient if a reasonable jury could come to this conclusion." *United States v. Nicholson*, 677 F.2d 706, 708 (9th Cir.1982).

To prove a conspiracy, the government must show (1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime. *United States v. Hill*, 953 F.2d 452, 457 (9th Cir.1991); *Medina*, 940 F.2d at 1250; *United States v. Ray*, 930 F.2d 1368, 1371 (9th Cir.1990), *cert. denied*, 498 U.S. 1124, 111 S.Ct. 1084, 112 L.Ed.2d 1189 (1991). To prove possession with intent to distribute, the government must show that the defendants knew contraband was present and that they were capable of exercising dominion and control over the contraband. *See United States v. Restrepo*, 930 F.2d 705, 709 (9th Cir.1991).

To support the convictions, the prosecution offered the following evidence: the information provided by the two informants regarding the three tons of marijuana in a Tucson stash house, later identified as the 918 Calle Catavinos residence; Estrada's arrest while driving away from the residence and Galaz and Selig's arrest at the residence; Estrada's admission to the police that two men were at the residence "taking care of the marijuana"; the strong odor of marijuana emanating from the house; the 1,001 pounds of marijuana; the ledger, which indicated that the house was being used as major warehouse for marijuana; the wrapping material, open bags of marijuana, .22 caliber Derringer, and various other paraphernalia scattered throughout the house; and the personal effects of each of the defendants, including correspondence of Selig and Estrada, documents indicating that Selig owned the two vehicles involved, and

some evidence of personal clothing belonging to Galaz. We conclude that this evidence is more than sufficient to support the defendants' convictions for conspiracy and possession with intent to distribute marijuana.

## B. Confrontation Clause

■ After his arrest, Estrada told Agent Rodriguez that "Jorge and Don" were at 918 Calle Catavinos "taking care of the marijuana." Before trial, Galaz and Selig moved to suppress this statement. The district court denied the motion, concluding that the statement properly could be sanitized with appropriate instructions. The statement was admitted with the word "individuals" substituted for the names of Selig and Galaz. Selig and Galaz now challenge that admission as violative of their Confrontation Clause rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We review de novo alleged violations of the Confrontation Clause. *See United States v. George*, 960 F.2d 97, 99 (9th Cir.1992).

In *Bruton*, the Supreme Court held that, because there is a substantial risk that the jury will use the facially incriminating confession of a non-testifying defendant as evidence of the guilt of his codefendant, admission of the confession in a joint trial violates the Confrontation Clause of the Sixth Amendment. *Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622. This is so even where the jury has been given "concededly clear instructions" to the contrary. *Id.* at 137, 88 S.Ct. at 1628 (Stewart, J. concurring).

The Supreme Court subsequently illuminated the *Bruton* holding in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). First, the Supreme Court clarified that only those statements that "expressly implicate" the defendant or are "powerfully incriminating" implicate the *Bruton* rule. *Id.* at 208, 107 S.Ct. at 1707. Second, the Supreme Court concluded that where the statement is not incriminating on

its face, but becomes so only when linked with evidence introduced later at trial, and where the statement has been redacted to eliminate not only the defendant's name, but any reference to his existence, then a limiting jury instruction adequately will protect the defendant's Confrontation Clause rights. *Id.* at 211, 107 S.Ct. at 1709.

In *Marsh*, the Supreme Court "express[ed] no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* at 211 n. 5, 107 S.Ct. at 1709 n. 5. The Eleventh Circuit, however, confronted that very question in *United States v. Vasquez*, 874 F.2d 1515 (11th Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990).

In *Vasquez*, the defendant challenged the admission into evidence of a codefendant's confession that had been redacted to eliminate all references to Vasquez's name, but not to his existence. *Id.* at 1518. Instead, the neutral word "individual" was substituted for Vasquez's name. *Id.* The Eleventh Circuit rejected the challenge and concluded that "the admission in a joint trial of a codefendant's confession that is redacted to substitute a neutral pronoun or other general word for the name of the complaining defendant does not violate *Bruton* so long as the confession does not compel a direct implication of the complaining defendant." *Id.* at 1518. We agree.

■ In this case, Estrada's confession was redacted and the neutral term "individuals" substituted for the names of the two other codefendants. The statement, therefore, was not incriminating on its face; it became so only when linked with evidence introduced later, namely Agent Rodriguez's subsequent testimony that Selig and Galaz were the men found and arrested at the 918 Calle Catavinos residence. Thus, under *Marsh* and *Vasquez*, there was no *Bruton* violation.[1]

---

1. Selig also moved for severance because of the alleged *Bruton* violation and because of the possibility of "rub off" of guilt from his codefendants. We review for an abuse of discretion a district court's ruling on a severance motion. *See United States v. Castro*, 887 F.2d 988, 996 (9th Cir.1988).

Generally, persons jointly indicted should be jointly tried. *United States v. Smith*, 893 F.2d 1573, 1581 (9th Cir.1990). To obtain severance, a defendant must show clear, manifest, or undue prejudice from a joint trial. *Id.* Because we reject Selig and Galaz's *Bruton* claim and be-

### C. Admission of Drug Ledgers

■ The district court admitted into evidence a purported drug ledger seized from the 918 Calle Catavinos residence. The defendants contend that the ledger was inadmissible hearsay. We review for an abuse of discretion the district court's admission of the ledger into evidence over the defendants' hearsay objection. *See United States v. Kirk*, 844 F.2d 660, 663 (9th Cir.), *cert. denied*, 488 U.S. 890, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988).

In *United States v. Ordonez*, 737 F.2d 793, 799 (9th Cir.1983), this court held that the rule against hearsay prohibits the admission of drug ledgers and pay/owe sheets to prove the truth of the matters asserted therein unless a proper foundation has been laid. Although the rule against hearsay does not stand as a bar to the admission of ledgers as "circumstantial evidence 'to show the character and use of the place where the [ledgers] were found,'" *id.* at 799 (citation omitted), ledgers are not admissible to prove the existence of a conspiracy. *Id.* at 806.

In *United States v. Jaramillo–Suarez*, 950 F.2d 1378, 1383 (9th Cir.1991), this court held that drug-related documents may be admitted to prove "the character and use" of the place where found. In so doing, the court recognized the risk that the government or jury erroneously may rely on the document for the truth of the matters asserted therein, but found that the trial court had obviated that danger by instructing the jury of the limited purpose of the sheets at the time of admission and at the close of the evidence. *Id.* at 1383–84. Accordingly, the court concluded that the trial court adequately had guarded against the risk of unfair prejudice. *Id.* at 1384.

In this case, the court admitted the ledgers for the limited purpose of showing the nature and use of the 918 Calle Catavinos residence and admonished the jury accordingly. Because juries generally are presumed to follow such cautionary instructions, *see Marsh*, 481 U.S. at 211, 107 S.Ct. at 1709, "the rule against hearsay was not implicated and the requirement of 'a proper foundational showing for admitting the records to prove the truth of the matters asserted' was not triggered." *Jaramillo–Suarez*, 950 F.2d at 1383 (citation omitted).

■ Because it is not hearsay, "such evidence may come in if there is a sufficient showing of relevance and authenticity and if its probative value outweighs undue prejudice." *United States v. Huguez–Ibarra*, 954 F.2d 546, 552 (9th Cir.1992). In *Huguez–Ibarra*, the court found that the documents were circumstantially authenticated because they were found in appellants' home in safes with cocaine and documents bearing appellants' names, because of the nature of their contents, and because they corroborated the testimony of government agents regarding the suspected drug trafficking. *Id.* at 552–53.

■ Here, the ledgers were similarly authenticated. They were found in the 918 Calle Catavinos residence on top of thirty to thirty-five bales of marijuana and with other evidence linking the defendants to the residence. In addition, the nature of their contents and the fact that they corroborated evidence regarding the suspected drug trafficking further authenticated them. Accordingly, we conclude that the district court did not abuse its discretion in admitting the ledgers for the limited purpose of showing the character and use of the 918 Calle Catavinos residence.[2]

cause the possibility that some of the evidence against Estrada and Galaz "rubbed off" on Selig is insufficient to prove compelling prejudice, *see id.*, we conclude that the district court did not abuse its discretion in rejecting Selig's severance motion.

2. The same analysis applies to Estrada's contention that the district court improperly admitted a cable television bill and a Veteran's Administration letter found at the 918 Calle Catavinos residence. As with the drug ledgers, these docu-

ments were not admitted to prove the truth of the matter asserted therein, but as circumstantial evidence to associate Estrada with the 918 Calle Catavinos residence. As such, under *Jaramillo–Suarez*, the rule against hearsay was not implicated and the requirement of a proper foundation not triggered. *See Jaramillo–Suarez*, 950 F.2d at 1383. Thus, the evidence could come in if there was a sufficient showing of relevance and authenticity and if its probative value outweighs undue prejudice. *See Huguez–Ibarra*, 954 F.2d at 552. As with the drug ledgers, we conclude that

### D. *Prosecutorial Misconduct*

■ The defendants allege various instances of prosecutorial misconduct during their trial. This court previously has stated that "[p]rompt and effective action by the trial court may neutralize the damage by admonition to counsel or by appropriate curative instructions to the jury, but prosecutorial misconduct invites reversal if it appears more probable than not that the alleged misconduct affected the jury's verdict." *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir.1990) (citation omitted).

"Ordinarily cautionary instructions are sufficient to cure the effects of improper comments." *United States v. Davis*, 932 F.2d 752, 761 (9th Cir.1991). "Even where no curative instruction is given, or the instruction is insufficient to cure the prejudicial impact of the impropriety, the court should 'not reverse a defendant's conviction if substantial, independent and credible evidence of the defendant's guilt overwhelms whatever incriminating aspects inadmissible statements may have had in isolation.'" *Id.* (citation omitted).

Two of the alleged instances of prosecutorial misconduct, including Agent Rodriguez's answer of "Martin" to the question "who he was looking for in particular" on the day of the defendants' arrests and Agent Rodriguez's testimony that, upon his arrest, Selig had told him that he was staying at the 918 Calle Catavinos residence, were immediately followed by strong cautionary instructions from the district court to the jury regarding their appropriate reaction and treatment of the testimony.

■ A trial court should declare a mistrial only when a cautionary instruction is unlikely to cure the prejudicial effect of an error. *United States v. Charmley*, 764 F.2d 675, 677 (9th Cir.1985). Because juries generally are presumed to follow such cautionary instructions, *see Marsh* 481 U.S. at 211, 107 S.Ct. at 1709, we conclude that it was not an abuse of discretion for the district court to deny the defendants' motions for a mistrial based on these incidents.[3]

■ Another alleged instance of prosecutorial misconduct involves the prosecutor's closing argument, during which the prosecutor directly linked Galaz to the 918 Calle Catavinos residence and indicated that Galaz had been staying there. Galaz contends that because there was no evidence demonstrating that he had ever entered the house or even associating him with the house other than his being in the yard when arrested, it was improper for the prosecution to so indicate.

■ First, the government offered some evidence that clothes belonging to Galaz were found at the 918 Calle Catavinos residence. Second, in fashioning closing arguments, prosecutors are allowed "reasonably wide latitude," *United States v. Birges*, 723 F.2d 666, 671–72 (9th Cir.), *cert. denied*, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984), and are free to argue "reasonable inferences from the evidence." *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990). Under these guidelines, the prosecutor's statements were not improper.

■ Another alleged instance of prosecutorial misconduct involves Agent Stevens' testimony "that we have had a lot of problems from near hits" while the prosecutor was attempting to establish a foundation for the drug ledger. The prosecutor immediately defined "near hits" as "assassination attempts." The defense counsel objected, and the district court sustained. The term "hits" was not used again.

---

under *Huguez–Ibarra* the district court did not abuse its discretion in admitting the cable television bill and the Veteran's Administration letter.

**3.** Moreover, because Agent Rodriguez's testimony regarding Selig's statement in no way was "expressly implicat[ing]" or "powerfully incriminat[ing]" with regard to Galaz or Estrada, we conclude that there was no *Bruton* violation. *Marsh*, 481 U.S. at 208, 107 S.Ct. at 1707; *see*

*also* § II.C., *supra*. Also, because Selig's statement was not favorable to the defense, we conclude that, even if the prosecutor knew about the statement, not revealing it to the defense did not violate *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir.1988) (favorable evidence is exculpatory or impeachment evidence).

The defendants now argue that introduction of the word "hits" was so prejudicial as to warrant a reversal of the their convictions. However, because the district court sustained a valid objection, *see Davis*, 932 F.2d at 761, and because the independent evidence against the defendants overwhelms whatever incriminating effect this statement may have had in isolation, *see id.*, we reject this argument.

▮ The final[4] alleged instance of prosecutorial misconduct involves Agent Hough's trial testimony that Galaz's name appeared in the drug ledger. Defense counsel's request that the answer be stricken was denied. Because this statement occurred during defense counsel's questioning of Agent Hough, we fail to see how it is tantamount to prosecutorial misconduct. Even if it were, the independent evidence against Galaz overwhelms whatever incriminating effect this statement may have had in isolation. *Id.* Accordingly, we conclude that the district court did not abuse its discretion in denying the motion for a mistrial.

AFFIRMED.

---

4. Because we previously rejected the defendants' *Bruton* violation claim, *see* § II.B., *supra*, we do not address that argument here.