19 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel Dean BRYAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Lee YOUNG, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Eugene FORRY, Defendant-Appellant.
 Nos. 92-50723, 92-50731 and 92-50734.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 4, 1994.
Decided March 1, 1994.
 
 1
 Before: GOODWIN, HALL, Circuit Judges, and TANNER.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Daniel Dean Bryan, Charles Lee Young, and William Forry appeal their jury convictions and sentences for possession and manufacture of methamphetamine. 21 U.S.C. Sec. 841(a)(1). They argue that the district court erred in denying their motion to suppress evidence. In addition, Young and Forry contend that their possession convictions were not supported by sufficient evidence and all three defendants argue that the district court erred in calculating their sentence under the Guidelines. Finally, Bryan argues that the district court erred in enhancing his sentence. We affirm Bryan and Forry's conviction and sentence,[1] but reverse Bryan's enhancement for possession of a firearm during a drug crime.
 
 
 4
 I. THE WARRANT TO SEARCH 23830 CASSANDRA ROAD
 
 
 5
 Bryan, Young and Forry first contend that the warrant to search 23830 Cassandra Road was not supported by probable cause. Although we review de novo a district court's determination that a warrant is valid, United States v. Huguez-Ibarra, 954 F.2d 546, 551 (9th Cir.1992), we review a magistrate judge's determination of probable cause only for clear error. United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991). We must uphold the warrant if, under the totality of the circumstances, the magistrate judge had a "substantial basis" for concluding that the affidavit in support of the search warrant established probable cause. United States v. Hernandez, 937 F.2d 1490, 1494 (9th Cir.1991) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).
 
 A. The Affidavit
 
 6
 The affidavit indicates that police arrested two individuals, Randy Fogle and Sharon Forry (Forry's estranged wife), for possession of methamphetamine. In separate interviews, both Fogle and Ms. Forry stated that Ms. Forry's husband, Bill Forry, and "Dan" had sold them the methamphetamine in question. They said that Forry and Dan "had large quantities of [methamphetamine] and were possibly involved in the manufacturing" of methamphetamine. Ms. Forry stated that she had been buying methamphetamine from her husband and Dan for four months and provided a phone number which she used to call them. She said Forry and Dan lived together in a A-frame house in Quail Valley with a trailer in front, that there was a surveillance camera at this residence and that "Dan" had numerous weapons, including a fully automatic Thompson machine gun.
 
 
 7
 Fogle also stated that Bill Forry and "Dan" supplied them with the methamphetamine in their possession and that Forry and "Dan" lived in an A frame house in Quail Valley with a white trailer in front and surveillance cameras inside. He agreed that "Dan" was heavily armed and specifically mentioned the Thompson sub machine gun. In addition, he said that "in the past" he had heard Bill Forry and Dan talking about numerous five gallon drums of "speed" buried on the property.
 
 
 8
 Police then took Ms. Forry and Fogle to Quail Valley. They identified 23830 Cassandra Road as Forry and "Dan's" house. The house fit their previous descriptions. In addition, police determined that the phone number Ms. Forry had provided was listed to defendant Daniel Dean Bryan, whose last known address was 23559 Cassandra Road, Quail Valley. DMV records indicated that Bryan drove a 1989 Ford truck, partially corroborating Ms. Forry's statement that "Dan" drove a dark-colored truck, possibly a Ford. Criminal records indicated Daniel Dean Bryan had "contacts for being in possession of explosive/destructive devices and possession of controlled substances" while William Forry had "prior arrests for possession of controlled substances."[2]
 
 
 9
 Defendants argue that Ms. Forry and Fogle were untested informants whose stories were essentially uncorroborated, that the affidavit did not establish sufficient nexus between the residence to be searched and the alleged drug trafficking, and that Fogle's statement about the drums of methamphetamine buried on the property was stale. We disagree.
 
 B. Reliability of the Informants
 
 10
 An informant's description of illegal activity is sufficient to establish probable cause if the totality of the circumstances indicate that the tip is reliable. United States v. Elliot, 893 F.2d 220, 223 (9th Cir.) (citing Illinois v. Gates, 462 U.S. 213, 230 (1983), amended and reh'ing denied, 904 F.2d 25, cert. denied, 498 U.S. 904 (1990). Although Ms. Forry and Fogle were untested informants, their statements corroborated each other.[3] They each independently identified "Dan" and Forry as their source of methamphetamine; they each independently described Dan and Forry's house and the Thompson sub-machine gun. Interlocking tips from different informants enhance the credibility of an informant. United States v. Hernandez-Escarsega, 886 F.2d 1560, 1566 (9th Cir.1989), cert. denied, 497 U.S. 1003 (1990); United States v. Landis, 726 F.2d 540, 543 (9th Cir.), cert. denied, 467 U.S. 1230 (1984).
 
 
 11
 In addition, although the police did not have independent evidence that Bryan and Forry were methamphetamine traffickers, certain innocent details of the informants' statements proved true. The phone number Ms. Forry provided was listed to a "Dan;" that same individual owned a truck fitting her description; and the house fit Ms. Forry and Fogle's description. When "an informant is right about some things, he is more probably right about other things." Gates, 462 U.S. at 244.
 
 
 12
 Moreover, Ms. Forry and Fogle's statements bear indicia of reliability, as they are statements against penal interest. United States v. Angulo-Lopez, 791 F.2d 1394, 1497 (9th Cir.1986) (citations omitted). The affidavit indicates that Ms. Forry and Fogle were promised that they would receive leniency "should any arrest or seizure be made." Thus, at the time of their statements, they knew that the police would investigate their stories and that they would receive leniency only if they gave reliable information. They thus had a motive to tell the truth.
 
 
 13
 Finally, both Fogle and Ms. Forry were caught with methamphetamine, suggesting that they had firsthand knowledge of methamphetamine and methamphetamine traffickers. Although Fogle may not have had firsthand knowledge of the source of the methamphetamine in his possession,[4] he learned of the source from Ms. Forry, his coconspirator. Ms. Forry said she had been buying from Forry and Dan for four months, and had been married to Forry. Both she and Fogle demonstrated familiarity with the residence. They had a substantial basis for making their accusations.
 
 
 14
 Fogle and Ms. Forry were not unreliable informants as a matter of law.
 
 
 15
 B. Nexus Between Criminal Activity and Place to Be Searched
 
 
 16
 Defendants also argue that the affidavit did not establish a "sufficient nexus" between the alleged criminal activity or evidence and the place or property to be searched. As they emphasize, an affidavit in support of a search warrant must show that there is a "fair probability that contraband or evidence of crime will be found in a particular place." Gates, 462 U.S. at 239.
 
 
 17
 The connection between 23830 Cassandra Road and defendants' alleged drug trafficking was admittedly tenuous. However, in contrast to United States v. Hove, 848 F.2d 137 (9th Cir.1988), police in the instant case did establish some nexus between the defendants' alleged activity and the property to be searched. The affidavit indicates that both informants identified 23830 Cassandra Road as the defendants' home and that the house fit their independent descriptions. Bryan's last listed address was nearby, although not identical, to this address.[5]
 
 
 18
 In addition, Fogle stated that the defendants had told him that they had drums of methamphetamine stored on their property. Although this information may have been stale, the methamphetamine actually seized from Fogle and Ms. Forry linked the defendants with current drug trafficking. United States v. Rabe, 848 F.2d 994, 997 (9th Cir.1988) (stale information can be used to establish a defendant's distribution system where there is evidence of current criminal activity); Hernandez-Escarsega, 886 F.2d at 1566 (where the affidavit tends to establish the existence of a well-entrenched ongoing narcotics operation, "staleness arguments lose much of their force"). Both informants stated that the house was equipped with surveillance cameras[6] and guns, suggesting that the residence contained something its owners wanted to protect. They also stated Bryan and Forry had "large quantities" of methamphetamine and were possibly manufacturing it, suggesting they needed a place to store such materials and perform such operations.
 
 
 19
 A magistrate judge "need not determine that the evidence sought is in fact on the premises to be searched ... or that the evidence is more likely than not to be found where the search takes place.... [but only that] it would be reasonable to seek the evidence in the place indicated in the affidavit." United States v. Terry, 911 F.2d 272, 275 (9th Cir.1990) (quoting United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985) (citations omitted) (emphasis in the original). In making this determination, the magistrate judge may "rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir.1987) (citations omitted). Thus, the magistrate reasonably relied on Officer Horst's statement that "people dealing in Methamphetamine tend to keep a supply on their person, in their vehicle(s), home or business."
 
 
 20
 Although the police could have done a more thorough job of checking Fogle and Ms. Forry's stories, the magistrate judge had a substantial basis for concluding that the affidavit established probable cause to search 23830 Cassandra Road for evidence relating to methamphetamine trafficking.
 
 II. INSUFFICIENT EVIDENCE CLAIMS
 
 21
 Young and Forry also contend that the evidence against them was insufficient to sustain a conviction for possession of methamphetamine. We disagree.
 
 
 22
 A conviction is supported by sufficient evidence " 'if reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992).
 
 
 23
 Both Young and Forry were arrested at 5:00 in the morning in a room containing a methamphetamine laboratory in which an active reaction was occurring. The house in which they were arrested was almost exclusively devoted to methamphetamine manufacture. This is strong circumstantial evidence of participation in a methamphetamine manufacturing venture.
 
 
 24
 Of course, as defendants emphasize, mere presence at the scene or proximity to drugs is not sufficient to prove possession. United States v. Vasquez-Chan, 978 F.2d 546 (9th Cir.1992); United States v. Ocampo, 937 F.2d 485, 488 (9th Cir.1991); United States v. Savinovich, 845 F.2d 834, 837-38 (9th Cir.), cert. denied, 488 U.S. 943 (1988). Rather, in order to "prove possession with intent to distribute, the government must show that the defendants knew contraband was present and that they were capable of exercising dominion and control over the contraband." United States v. Enriquez-Estrada, 999 F.2d 1355, 1358 (9th Cir.1993) (citing United States v. Restrepo, 930 F.2d 705, 709 (9th Cir.1992)). The government may meet this burden by showing (1) that the defendant actually or constructively possessed the drug; (2) that he aided or abetted others in possessing the drug within the meaning of 18 U.S.C. Sec. 2 or (3) that he was a member of a conspiracy to possess a drug. United States v. Ramos-Rascon, 8 F.3d 704, 711 (9th Cir.1993); United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir.1993).
 
 A. Young's Conviction
 
 25
 Young argues that the government did not prove that he exercised "dominion and control" over the methamphetamine because little evidence tied him to the house or the lab and no evidence contradicted his claim of being only an occasional visitor to 23830 Cassandra Road. United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989) (to prove possession, the government must show "ownership, dominion or control over the contraband itself or the premises or vehicle in which the contraband is concealed."). Unlike Bryan and Forry, Young made no effort to conceal or destroy the laboratory when police entered.
 
 
 26
 However, the government showed (1) that certain notebooks and "Chem. Lab." business cars were found in Young's truck; (2) that one of the notebooks, which Young admitted was his, stated "went to Kem's [or Ken's] in L.A." and had incriminating notations about cork sizes;[7] (3) that the other notebooks, which Young said did not belong to him, contained similar notations about corks, a shopping list of chemicals used in methamphetamine manufacture, and the statement "went to Kim. Lab. for D.D. & Bill." Further, two police officers testified that Young was alone in the methamphetamine laboratory (and not on the couch) when they entered the house, and that an active reaction was occurring in the lab.
 
 
 27
 Viewed in the light most favorable to the prosecution, this evidence is sufficient to hold Young criminally liable for possession under an aiding and abetting theory. A jury who believed the police officers about Young's location, and disbelieved Young's denials about the notebooks, could infer beyond a reasonable doubt that Young associated himself with the methamphetamine manufacturing venture, participated in it as something that he wished to bring about, and sought by his action to make it succeed." Ramos-Rascon, 8 F.3d at 711 (quoting Vasquez-Chan, 978 F.2d at 552); United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir.), cert. denied, 114 S.Ct. 359 and 573 (1993) (aider and abettor's criminal intent may be inferred from the attendant facts and circumstances and need not be established by direct evidence). We thus cannot reverse Young's conviction for insufficient evidence.
 
 B. Forry's Conviction
 
 28
 In Forry's case, the evidence showed (1) that he was arrested at 5:00 in the morning in a fully functional methamphetamine lab, in which an active reaction was occurring; (2) that he was a resident or at least frequent occupant of the house and was involved in making decisions about the house;[8] (3) that his fingerprint was on laboratory glassware and on a solvent used in the manufacture of methamphetamine; and (4) that he and Bryan attempted to destroy the laboratory when officers entered the house, consistent with the underlined passage of a book found in the house, which advised destroying the laboratory if police entered. United States v. Rodriguez, 761 F.2d 1339, 1341 (9th Cir.1985) (covering up of crime is evidence supporting conviction).
 
 
 29
 In light of Forry's behavior when the police entered the laboratory, and the evidence about Forry's relationship to the house, a reasonable jury could infer that Forry and Bryan together had authority over the house and laboratory and together planned the methamphetamine manufacture. This evidence is sufficient to show Forry constructively possessed the drugs. Enriquez-Estrada, 999 F.2d at 1358-59.
 
 III. SENTENCING
 A. Base Offense Level
 
 30
 Bryan, Forry and Young also argue that the district court erred in calculating their base offense level under the Sentencing Guidelines. Specifically, they contend that the court erred in calculating their sentences based on the total weight of the noninjestible liquid precursor of methamphetamine recovered from the laboratory, rather than the weight of the pure methamphetamine it contained. They argue that the liquid was not a "mixture or substance" within the meaning of U.S.S.G. Sec. 2D1.1 because it was not marketable or ingestible and that the district court erred in relying on United States v. Beltran-Felix, 934 F.2d 1075 (9th Cir.1991), cert. denied, 112 S.Ct. 955 (1992) (addressing an ingestible mixture).
 
 
 31
 In support of this argument, they note that other circuits have distinguished non-ingestible substances from ingestible ones.[9] They also argue that such an interpretation of Sec. 2D1.1 is consistent with United States v. Chapman, 500 U.S. 453 (1991), in which the Supreme Court held that because LSD is sold on papers and the Guidelines mandate a market-oriented approach, the weight of LSD for sentencing purposes includes the weight of its paper carrier and not just the weight of the pure LSD.
 
 
 32
 However, we recently rejected exactly this argument and distinguished exactly these cases. United States v. Innie, 7 F.3d 840, 845-47 (9th Cir.1993) (the entire weight of a poisonous methamphetamine mixture was relevant for sentencing purposes). In light of Innie, defendants' argument has no merit.
 
 
 33
 B. Two Level Enhancement for Reckless Endangerment (BRYAN)
 
 
 34
 Bryan also argues that the district court erred in imposing a two-level increase for reckless endangerment during flight pursuant to U.S.S.G. Sec. 3C1.2. The district court imposed this increase based on its finding that Bryan "raked his hand over the table [spilling a beaker of toxic chemicals and] causing endangerment to those around him." Bryan contends that the district court's finding was clearly erroneous because, at trial, one officer testified that Forry spilled the chemicals while a second officer testified that Bryan did so.
 
 
 35
 This argument essentially asks this court to review the district court's credibility determinations. However, a district court's factual findings will not be overturned unless clearly erroneous, United States v. Madera-Gallegos, 945 F.2d 264, 266 (9th Cir.1991), and a district court's credibility determinations in particular are accorded great deference. United States v. Huffhines, 967 F.2d 314, 317 (9th Cir.1992). The district court apparently found one officer's testimony more credible. This finding is not clearly erroneous.
 
 
 36
 C. Two-level Enhancement for Possession of a Firearm (BRYAN)
 
 
 37
 Finally, Bryan contends that the district court erred in imposing a two-level enhancement pursuant to U.S.S.G. Sec. 2D1.1(b) for possession of a firearm. He argues, based on United States v. Kelso, 942 F.2d 680 (9th Cir.1991), that the district court erred in using the gun to enhance his sentence because, although the gun was found in a drawer at 23830 Cassandra, there is no evidence that Bryan possessed it. This argument has merit.
 
 
 38
 In Kelso, the defendant was an occupant in a car containing both drugs and a gun. Both were within his reach at the time of arrest. However, although Kelso admitted ownership of the drugs, he insisted that he had no knowledge of the gun. The government offered no evidence showing that the gun belonged to Kelso or that Kelso was even aware of its presence. The district court nonetheless enhanced Kelso's sentence pursuant to U.S.S.G. Sec. 2D1.1(b)(1) because the gun was in easy reach and Kelso had previous gun-related convictions. This court reversed, finding that "this is insufficient evidence of a relationship between Kelso and this gun to establish constructive possession." Id. at 682 (emphasis in the original).
 
 
 39
 In Bryan's case, the government presented evidence that both Forry and Bryan were regular occupants of 23830 Cassandra and that both of them constructively possessed the laboratory and drugs present at the house. However, the government presented no evidence that Bryan owned the gun and it may have belonged exclusively to Forry, to Young, or to some unidentified third party who had been in the house.
 
 
 40
 The government argues, however, that Kelso is inapplicable because, while Kelso did not own the car in which the gun was found, Bryan might have owned 23830 Cassandra Road. We disagree. The government did not show that Bryan had exclusive control over the house or the drawer, and it presented no evidence that Bryan in fact owned or possessed the gun. See, e.g., United States v. Frushon, 10 F.3d 663, 665 (9th Cir.1993) (joint occupancy of home not enough to show possession of contraband found in home). Thus, the government has shown at most that Bryan had access to a gun, not that he possessed it.
 
 
 41
 Bryan and Forry's convictions and Forry's sentence are AFFIRMED; Bryan's sentence is REVERSED and remanded for resentencing.
 
 
 
 *
 Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In a separate, published opinion, we reverse Young's conviction because the government used false evidence against him
 
 
 [2]
 In fact, Bryan's conviction for possession of explosive devices was almost twenty years old (1975) and neither Forry nor Bryan had been convicted of drug charges
 
 
 [3]
 Defendants argue that Ms. Forry's and Fogle's statements did not establish probable cause because, under California state law, information from an untested informant does not establish probable cause unless the information is corroborated in essential respects by other facts, sources or circumstances. See, e.g., People v. Johnson, 220 Cal.App.3d 742, 751, 270 Cal.Rptr. 70 (1990) ("Any rookie officer knows uncorroborated, unknown tipsters cannot provide probable cause for an arrest or a search warrant"); People v. Maestas, 204 Cal.App.3d 1208, 1220, 252 Cal.Rptr. 739 (1988) ("It is or should be self-evident that the unverified story of an untested informant is ordinarily unreliable."). However, in this case police did have independent corroboration as Fogle and Ms. Forry corroborated each other. Moreover, federal standards control application of the exclusionary rule in federal court, even when state officers perform the search. United States v. Davis, 932 F.2d 752, 758 (9th Cir.1991); United States v. Chavez-Vernaza, 844 F.2d 1368, 1374 (9th Cir.1987)
 
 
 [4]
 Although the affidavit in support of the search warrant does not so indicate, Fogle apparently told police that Ms. Forry had told them that Forry and Dan were the source of their methamphetamine. However, that Ms. Forry gave the same information to a coconspirator may still provide independent corroboration of her statement to police
 
 
 [5]
 Bryan apparently lived in the trailer parked in front of 23830 Cassandra Road
 
 
 [6]
 Defendants complain that the affidavit did not specifically state that no surveillance cameras were visible when officers took Ms. Forry and Fogle to the house. The affidavit noted only that the house fit Ms. Forry and Fogle's description and that it was "well lighted with flood lights surrounding the house, with extra lighting shining on the front and back door." However, the affidavit does not misleadingly imply that officers did observe surveillance cameras and, assuming surveillance cameras can be placed in such a way as to make their detection difficult from the outside, the officers' failure to observe them from the outside of the house did not preclude them from relying on Ms. Forry and Fogle's statements that they existed
 
 
 [7]
 Young testified that "Ken's" referred to a friend of Bryan's, and that he did not write the notations about corks
 
 
 [8]
 Young's testified, for example, that Forry told him what to do in painting the house and that Forry was present every time he visited the house
 
 
 [9]
 See United States v. Acosta, 963 F.2d 551, 554-55 (2d Cir.1992); United States v. Rolande-Gabriel, 938 F.2d 1231, 1237 (11th Cir.1991); United States v. Jennings, 945 F.2d 129 (6th Cir.1991), opinion clarified by 966 F.2d 184 (6th Cir.1992)