**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wayne PETERSON, Defendant–**
**Appellant.**

No. 97–10128.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1998.

Decided March 31, 1998.

4. We express no view as to the merits of the dismissal of this action.

Bertram T. Kaufmann, Fresno, California, for the defendant-appellant.

William S. Wong, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellee.

Before: SCHROEDER, FARRIS and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

Wayne Peterson appeals the district court's denial of his motion for a new trial. Peterson was convicted of conspiring with a codefendant to distribute methamphetamine. The codefendant did not testify, but his confession was read into evidence at their joint trial. All references to Peterson had been redacted and replaced with "person X." In light of *Gray v. Maryland,* — U.S. —, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), we reverse and remand for a new trial.

## I. FACTUAL BACKGROUND

Peterson and his codefendant, Oscar Luna, were convicted of conspiracy to distribute methamphetamine. Oscar Luna had made several post-arrest statements to the government which directly implicated Peterson. Before trial, the prosecutor and Peterson's counsel agreed to redact Peterson's name from Oscar Luna's post-arrest statements and replace it with "person X." During closing argument, the prosecutor argued that Peterson was "person X." The prosecutor also read from a police report that had not been admitted into trial. After he was convicted, Peterson moved for a new trial.

The district court concluded that the prosecutor had erred in referring to Peterson during his closing argument as "person X," but concluded that the *Bruton* error was harmless beyond a reasonable doubt. The court also concluded that reading from the unadmitted police report was harmless.

## II.  STANDARD OF REVIEW

■ We review a district court's denial of a motion for a new trial pursuant to Fed. R.Crim.P. 33 for an abuse of discretion. *United States v. Young,* 17 F.3d 1201, 1203 (9th Cir.1994). Alleged violations of the Confrontation Clause, however, are reviewed de novo. *United States v. George,* 960 F.2d 97, 99 (9th Cir.1992).

■ The denial of a motion for a new trial based on prosecutorial misconduct is reviewed for an abuse of discretion. *United States v. Sayetsitty,* 107 F.3d 1405, 1408 (9th Cir.1997). Peterson had the burden of showing that it is "more probable than not that the misconduct materially affected the verdict." *United States v. Hinton,* 31 F.3d 817, 824 (9th Cir.1994) (citation omitted).

## III.  DISCUSSION

### A.  The *Bruton* Violation

■ In this case, there was clearly a *Bruton* violation. In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court ruled that a defendant is deprived of his Sixth Amendment right of confrontation when a facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant. *Id.* at 126, 88 S.Ct. at 1622–23. The Court stated:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Id.* at 135–36, 88 S.Ct. at 1627–28 (citations omitted).

In *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176, (1987), the Court held that admission of a nontestifying codefendant's confession *with a proper limiting instruction* does not violate the Confrontation Clause, *if* the confession is redacted to eliminate not only the defendant's name, but any reference to her or his existence. *Id.* at 211, 107 S.Ct. at 1709. In a footnote, the Court stated: "We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or a neutral pronoun." *Id.* at 211 n. 5, 107 S.Ct. at 1709 n. 5.

After *Richardson,* we held that redacting a confession by replacing the defendant's name with a neutral pronoun did not violate *Bruton. United States v. Enriquez–Estrada,* 999 F.2d 1355 (9th Cir.1993). We there agreed with the proposition that:

> [T]he admission in a joint trial of a codefendant's confession that is redacted to substitute a neutral pronoun or other general word for the name of the complaining defendant does not violate *Bruton* so long as the confession does not compel a direct implication of the complaining defendant.

*Id.* at 1359 (quoting *United States v. Vasquez,* 874 F.2d 1515, 1518 (11th Cir.1989)). In *Enriquez–Estrada,* the codefendant's statements were redacted and the term "individuals" substituted for the name of the other two codefendants. The redaction read that "individuals," not Jorge and Donald, were at a house under police surveillance "taking care of marijuana." *Id.*

We read *Gray v. Maryland* to severely limit our holding in *Enriquez–Estrada.* In *Gray,* the Court held that redactions that replace a name with an obvious blank space, a word such as "deleted," or a symbol or other obvious indication of alteration so closely resemble *Bruton's* unredacted statements as to warrant the same legal results. —— U.S. at ——, 118 S.Ct. at 1152. The Court reasoned that a jury will often realize that such a redacted confession refers specifically to the defendant, and an obvious deletion may call the jurors' attention specifically to the removed name and encourage speculation about the reference. *Id.* at ——, 118 S.Ct. at 1152. The Court concluded that "*Bruton's* protected statements and statements redacted to leave a blank space or some other similarly obvious alteration, func-

tion the same way grammatically. They are directly accusatory." *Id.*

The Court did note that redactions which do not lead to the inference that a specific person was named and the identity of that person protected through redaction may be appropriate. For example, in *Gray,* the question was "Who was in the group that beat Stacey?" The inappropriate redacted answer was read as: "Me, deleted, deleted, and a few other guys." An appropriate redaction, the Court suggested, would have been: "Me and a few other guys." *Id.* at ——, 118 S.Ct. at 1157.

■ *Gray* clarifies that the substitution of a neutral pronoun or symbol in place of the defendant's name is not permissible if it is obvious that an alteration has occurred to protect the identity of a specific person. Therefore, *Enriquez–Estrada,* to the extent it suggests the contrary, has been overruled by *Gray.*[1]

■ In this case, the redaction of Peterson's name for "person X" is clearly impermissible under *Gray.* The codefendant was pointing an accusatory finger at someone and it was not difficult for the jury to determine that that person was the other defendant on trial.[2] The lack of any limiting in-

struction to the jury, and the prosecutor's closing argument that Peterson was "person X," an argument which would be clearly prohibited under *Gray,* further compounded the constitutional violation.[3]

## B. Harmlessness of the *Bruton* Error

■ Once there has been a *Bruton* error, the prosecution has the burden of showing that the error was harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Whether an error is harmless depends on a variety of factors, including "whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Unless we can confidently say that, on the whole record, the verdict would have been the same without the *Bruton* error, then Peterson should be granted a new trial. *Id.* at 681, 106 S.Ct. at 1436. *See also United States v. Castaneda,* 16 F.3d 1504, 1509 (9th Cir.1994)

---

1. We note, however, that the redaction in *Enriquez–Estrada,* where the word "individuals" was substituted for the names of the codefendants, may have been permissible under *Gray, if* it were not possible for the jury to infer that the statement had been altered so that specific names had been redacted, a matter we are unable to determine from the facts stated in the opinion.

2. The jury heard the following regarding Oscar Luna's statements:

   [Oscar Luna] said that he knew a person—a person X who was capable of manufacturing methamphetamine. He also stated that this person would rather have somebody else manufacture the methamphetamine, give this person the finished product, at which time this person would distribute it.

   [Oscar Luna said] [a]pproximately six months prior to us arresting him, he had been approached by person X, who wanted to purchase methamphetamine ... he introduced Wetto with person X ... After introducing Wetto to person X, the person X received approximately 11 pounds from Wetto. Based on Mr. Luna's recommendation to Wetto, person X was a person that could be trusted with the methamphetamine that was fronted to them ... Due to this, person X was able to distribute the methamphetamine, and then made a $15,-

   000 payment to Oscar Luna. The payment came in two separate installments, one of which Bond Brye was sent down to San Diego and received $7,000, and then transported it up and turned it over to Oscar Luna ... He said that the second methamphetamine purchase was arranged between Wetto and person X and that during this transaction, approximately 10 pounds of methamphetamine were to be fronted to person X....

3. The prosecutor argued:

   Well, what else supports the conspiracy? We have defendant Oscar Luna's confession ... Furthermore, [Oscar Luna] stated that he also deals with this person X, and this person X moves a lot of methamphetamine ... Well, we are now at a point where you can decide who is person X. Who do you think it is? It's Wayne Peterson ... *Person X is Wayne Peterson.* Think about what words Oscar Luna uses. Think about the facts that corroborate the identity of person X as defendant Wayne Peterson, and you'll see what I mean. So this man, Mr. Peterson is involved with Oscar Luna ... Let's look at the corroboration ... But you have more than that. You have Oscar Luna's own statement ... Oscar Luna corroborates everything to what Allyson Taylor and Pete Luna says.

(admission of codefendant's hearsay testimony not harmless beyond a reasonable doubt where independent evidence of conspiracy weak).

The government argues that any *Bruton* violation was harmless beyond a reasonable doubt because the evidence against Peterson was "overwhelming." The district court concluded, without explaining its reasons, that "any error committed in connection with *Bruton* is harmless beyond a reasonable doubt." Almost all, if not all, of the evidence presented against Peterson was based on the testimony of Pete Luna, Jr., and Allyson Taylor. The prosecutor himself stated that the government could not rely solely on the word of Pete Luna and Taylor to make a case against Peterson. The prosecutor deliberately and explicitly used the statements of Oscar Luna to corroborate their testimony. The prosecutor argued:

> No one has to tell me ... that you can't go into court with just the testimony of confidential informants, and we didn't do that here ... Mr. Huss says [that] Allyson Taylor lied to you ... Go back to December 8, when Oscar Luna was talking to Special Agent Stanfill ... Does that not corroborate Allyson Taylor's statements? No one is going to stand here and tell you that Allyson Taylor and Pete Luna, Jr. are the clarity of truth.

And the government did not even find Oscar Luna's post-arrest statements completely credible. Agent Stanfill testified that:

> [A] problem that we had with [Oscar] Luna is, he gave us these grandiose ideas, people who were importing 5, 10, 20 tons of marijuana, which obviously we took with a grain of salt, and we tried to advise him, okay, our first course of business is going to be with the methamphetamine and marijuana ... And the information that he was giving us on these individuals, we could not verify. So between not being able to verify information and him not concentrating on the targets that we wanted to concentrate on initially, we just stopped the cooperation.

Unfortunately, the government was unable to produce any evidence against Peterson other than the words of Taylor, Pete Luna and Oscar Luna, and a good portion of what those witnesses said was unsubstantiated, based on secondhand knowledge, and/or inconsistent with prior statements. This is a far cry from an overwhelming case. We are unable to say, on the record as a whole, that the *Bruton* error was harmless beyond a reasonable doubt. Therefore, the district court abused is discretion when it denied Peterson's motion for a new trial.

## C. Governmental Misconduct

Peterson also argues that the district court erred in denying his motion for a new trial based on prosecutorial misconduct.

The misconduct occurred when the prosecutor read from Agent Stanfill's police report, which had not been admitted into evidence, during closing arguments. The parts that the prosecutor read from the police report, however, merely repeated the basic substance of Stanfill's testimony and did not include any new information. *See United States v. Freter,* 31 F.3d 783 (9th Cir.1994). The district court concluded that the misconduct did not result in any prejudice to the defendant, and we agree. Peterson has not shown that he was prejudiced by the prosecutor's error of arguing from this unadmitted police report. The district court did not abuse its discretion by denying a mistrial based on this error.

## IV. CONCLUSION

Because the government did not meet its burden of showing that the *Bruton* violation was harmless beyond a reasonable doubt, the district court should have granted Peterson's motion for a new trial.

**REVERSED and REMANDED.**