**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennis Keith McCHRISTIAN,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Berry INGRAM, Defendant–
Appellant.**

**Nos. 92–10644, 92–10704.**

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 10, 1994.*

Decided Jan. 18, 1995.

---

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

David R. Mugridge, Fresno, CA, for defendant-appellant McChristian.

Thomas J. Richardson, Fresno, CA, for defendant-appellant Ingram.

William S. Wong, Asst. U.S. Atty., Fresno, CA, for plaintiff-appellee.

Before: FLETCHER, HALL and WIGGINS, Circuit Judges.

Opinion by Judge WIGGINS; Partial Dissent by Judge HALL.

## OPINION

WIGGINS, Circuit Judge:

Dennis Keith McChristian and John Berry Ingram were convicted of conspiracy to possess with intent to distribute methamphetamine, possession with intent to distribute that drug, and aiding and abetting. They appeal from several of the district court's trial and sentencing rulings.[1]

---

1. We address only arguments made in Ingram's first appellant brief and first reply brief, filed by Ingram's counsel. Ingram filed a second appellant brief without permission from this court. *See* Fed.R.App.P. 28(c) ("No further briefs may be filed except with leave of court."). This sec-

ond brief made only arguments not raised in the first. Arguments not raised in the first appellant brief are waived. *Sanchez v. City of Santa Ana*, 915 F.2d 424, 430 (9th Cir.1990), *cert. denied*, 502 U.S. 815, 112 S.Ct. 66, 116 L.Ed.2d 41 *and cert. denied*, 502 U.S. 815, 112 S.Ct. 66, 116

## DISCUSSION

### A. Prior Conviction

Ingram was convicted in 1982 in state court. The district court, relying on this prior conviction, sentenced Ingram to life without parole pursuant to 21 U.S.C. § 841(b). Ingram attempted to challenge the constitutionality of the 1982 conviction on the ground that his guilty plea was not knowing and voluntary. Ingram also tried to show that, after he had been indicted in federal court on the current charge, a state trial court had held the 1982 conviction invalid. The district court rejected Ingram's arguments, relying on 21 U.S.C. § 851(e), which provides that the validity of a prior conviction that "occurred more than five years before the date of the information alleging such prior conviction" cannot be challenged.

Ingram argues that 21 U.S.C. § 851(e) is unconstitutional. This argument must fail, however, in light of recent Supreme Court and Ninth Circuit precedent. Although this circuit originally held 21 U.S.C. § 851(e) unconstitutional, in *United States v. Davis*, 15 F.3d 902 (9th Cir.1994), that opinion was subsequently withdrawn and reversed in light of a new Supreme Court case, *Custis v. United States*, — U.S. —, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994).

■ The Court in *Custis* ruled that a defendant does not have a constitutional right to challenge a prior conviction which is otherwise proscribed by the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) (ACCA). The Court held that, except in the limited circumstance in which the prior conviction was obtained in violation of the right to have counsel appointed, *see Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), a defendant has no constitutional right to challenge prior convictions used to enhance a currently imposed sentence. — U.S. at —, —, 114 S.Ct. at 1737–39. Because Custis's arguments against his prior convictions did not include allegations that he

was without counsel and that none was appointed for him, Custis was not allowed to attack the prior convictions. *Id.* at —, 114 S.Ct. at 1738.

This circuit, following *Custis*, recently withdrew its original *Davis* decision, and ruled that § 851(e)'s provisions are constitutional. *United States v. Davis*, 36 F.3d 1424, 1438–39 (9th Cir.1994). Therefore, because Ingram does not allege that his 1982 conviction is invalid for lack of having counsel appointed for him, he has no constitutional right to attack the 1982 conviction.

■ Ingram presents another argument that the district court erred in relying on the 1982 conviction, however. After Ingram was indicted in federal court and became aware that the government would attempt to rely on the 1982 conviction, Ingram went back to Kern County Superior Court, the court that convicted him in 1982, and moved that his case be reopened and his conviction be stricken. The Kern County Superior Court, Judge Rebecca A. Wiseman, reopened Ingram's case on July 7, 1992, and granted Ingram's motion to strike the prior conviction. Thus, at the time Ingram was sentenced in federal court in October 1992, the 1982 conviction had been declared invalid by the court of conviction. Ingram contends that the district court erred in relying on this invalid conviction and that § 851(e) does not preclude Ingram from showing the court that the conviction has been invalidated. We agree.

At issue is whether the phrase "challenge the validity" in § 851(e) includes a showing that a prior conviction has been invalidated in a proceeding in state court. Ordinarily, Ingram could make such a showing under § 851(c)(1) which allows defendants to "claim[ ] that any conviction alleged is invalid." However, if § 851(e), which bars any "challenge [to] the validity" of a five-year-old conviction, precludes such a showing, then the district court did not err. On the other hand, if "challenge the validity" does not include a simple showing that a prior convic-

---

L.Ed.2d 41 (1991). Moreover, the record does not show that Ingram's counsel has withdrawn or that Ingram is not now represented. Accordingly, we will consider neither Ingram's second

brief nor the government's response and Ingram's reply to it that have been lodged with the court.

tion has been invalidated in a state court proceeding, then the district court erred in failing to accept Ingram's showing, and Ingram's sentence should be vacated.

Though we have found no case law on point on this question, we are persuaded by several reasons that "challenge the validity" does not include the type of showing Ingram attempted. First, after Ingram's conviction was invalidated by the Kern County Superior Court, Ingram's 1982 conviction had no "validity" that could be challenged. The court that convicted Ingram struck the conviction. Thus, any challenge in federal court to the validity of that conviction would have been moot.

■ Second, a careful reading of the statute convinces us that § 851(e)'s purpose was to exclude from federal court only collateral challenges to convictions and not reports of successful collateral challenges completed in state court. Section 851(e) prevents only a "challenge [to] the validity of [the] prior conviction." The word "challenge" is used only three other times in § 851, once in § 851(b) and twice in § 851(c)(2). Section 851(b) is ambiguous as to whether "challenge" includes the submission of evidence that a prior conviction has been invalidated by a state court. Section 851(c)(2) is not ambiguous, however. Section 851(c)(2) outlines what steps a defendant must take to mount in federal court a full-blown, collateral attack on a prior conviction. The section sets forth the burden of proof necessary and imposes time limits within which such an attack must be made. "Challenge" in § 851(c)(2) clearly refers to a collateral attack in federal court. Because "challenge" to a prior conviction, as used in § 851(c)(2), means only a full-blown, collateral attack in federal court on the prior conviction, we conclude that "challenge" means the same in § 851(e). *See King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) ("[A] statute is to be read as a whole . . . since the meaning of statutory language . . . depends on context.").

Third, our interpretation of the statute is fair to the government. The government has various interests that § 851(e) serves by excluding collateral challenges to old convic-

tions (expense of keeping court records indefinitely, concerns about evidence being lost over time, and "thorny procedural difficulties" at sentencing hearings, *Davis,* 36 F.3d at 1438). In Ingram's case, however, in which a prior conviction was held invalid by a state court before Ingram's sentence was imposed, these interests in the finality of sentences are inapposite. We can think of no government interest in enhancing a defendant's sentence based on a prior conviction that has already been shown to be obtained in violation of the Constitution. For these reasons, we think § 851(e) would not preclude Ingram showing, hypothetically, that the 1982 conviction was invalidated in a 1988 habeas proceeding. The 1992 collateral proceeding in state court was substantively no different than a 1988 habeas proceeding. The mere fact that the invalidation occurred shortly after Ingram was indicted in federal court, rather than shortly before, makes no difference. For the foregoing reasons, we conclude that Ingram may "claim that [his 1982] conviction [was] invalid," as § 851(c)(1) allows, even though § 851(e) precludes a "challenge [to] the validity of" that conviction under § 851(c)(2). Section 851(e) does not preclude Ingram from claiming that his 1982 conviction was invalid, even though Ingram may not mount in federal court a collateral attack on that conviction. The district court therefore erred in relying on § 851(e).

■ Ingram's successful collateral attack on his 1982 conviction was on appeal at the time Ingram was sentenced. Along with § 851(e), the district court cited this fact in relying on the 1982 conviction. We conclude that this reliance was also error. *Williams v. United States,* 651 F.2d 648 (9th Cir.1981), which held that a prior conviction is not "final" for enhancement purposes while certiorari before the Supreme Court is pending, indicates that no reliance should be placed on a conviction while direct appeal is pending. Considerations that guided *Williams* guide our decision. Both the "orderly administration of justice" and the "possib[ility of] conflicting results [between state and federal court decisions], with all their attendant complications and embarrassments," 651 F.2d at 650 (internal quotations omitted), suggest

that the district court should refrain from relying on a conviction that has been held invalid by a state court, while the appeal of that invalidation is pending. We therefore conclude that the district court erred in precluding Ingram from showing that his 1982 conviction had been invalidated.

## B. Indictment

■ The superseding indictment in this case was returned before a federal magistrate judge, as the record reflects:

THE COURT: The record should reflect we're in session in chambers to receive indictments. Mr. Richter is present, Ms. Kalmanir is present, and the court staff.

In the matter of the United States ... v. ... Ingram, ... I have received a [S]uperseding Indictment [a]lleging [various crimes].

The record of proceedings indicates twenty of the Grand Jurors concurred. I'll accept the indictment, order it filed.

Ingram claims that the indictment was not returned "publicly" and that this defect is fatal to the indictment and violates the Fifth (grand jury) and Sixth (public trial) Amendments. In support, Ingram cites *Renigar v. United States*, 172 F. 646, 650 (4th Cir.1909) ("[I]t is essential to the validity of an indictment that it be presented in open court and in the presence of the grand jury."); Fed. R.Crim.P. 6(f) ("The indictment shall be returned by the grand jury to a federal magistrate judge in open court."); and Fed. R.Crim.P. 31(a) (requiring that verdicts also be "returned by the jury to the judge in open court"). Ingram also contends that the failure to return the indictment in open court is jurisdictional. *Renigar*, 172 F. at 658 (holding such defect to be jurisdictional).

We must reject Ingram's arguments. *United States v. Lennick*, 18 F.3d 814 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 162, 130 L.Ed.2d 100 (1994), controls this issue. In *Lennick*, the indictment was "not physically handed to a federal magistrate in open court[, but] ... the prosecuting attorney handed it to a court clerk when the court

was not in session." *Id.* at 817. The court reasoned:

We agree that Fed.R.Crim.P. 6(f) requires indictments to be returned in open court.... However, ... errors in the grand jury indictment procedure are subject to harmless error analysis unless the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair. Dismissal of an indictment is considered a drastic step and is generally disfavored as a remedy. A defect in form which does not prejudice the defendant does not require dismissal.

*Id.* (internal quotations and citations omitted). In *Lennick*, the grand jury foreman and U.S. Attorney signed the indictment and the clerk filed it promptly. Lennick was arraigned five days later and made no objection. The trial was held promptly. The indictment notified Lennick of the charges against him. He failed to show that the grand jury treated him unfairly. Further, evidence against Lennick was overwhelming. A jury later found him guilty. Nothing suggested that the grand jury would not have returned the indictment in open court. For all of these reasons, the court held that the procedure employed in *Lennick* was not fundamentally unfair and was therefore harmless, even though it technically violated Rule 6(f). *Id.* at 817–18.

Ingram alleges that his indictment was defective because the public was not present when the magistrate received it and the grand jury did not return the indictment as a body. These alleged defects were present in *Lennick*. Further, the grand jury foreman and U.S. attorney were present when the magistrate received and opened Ingram's indictment. Ingram has not alleged that his arraignment or trial was delayed, that the grand jury treated him unfairly, or that the indictment did not fairly notify him of the charges. Ingram later admitted factual guilt before the petit jury, which convicted him. Nothing suggests that the grand jury would not have returned the indictment in open court or that Ingram was harmed as a result of their failure to do so. In these circum-

stances, a harmless error standard applies,[2] and *Lennick* controls. The error was harmless.

## C. Arrest of Defense Witness

■ Ingram alleges that the prosecutor engaged in misconduct by ordering a defense witness, Billie Allison, arrested and then informing the jury of the arrest. When Ms. Allison arrived at the courthouse to testify, she was under the influence of methamphetamine. Later in the trial, the prosecutor called a police officer to the stand and examined him at length about his coming to the U.S. Attorney's office after Ms. Allison testified to examine Ms. Allison and allegations that she was under the influence of drugs. We find the prosecutor's conduct to be appropriate. Ms. Allison testified under the influence. The prosecutor had a right, and maybe a duty, to point that out. Moreover, Ingram's contention that the jury was informed that Ms. Allison was arrested is not supported by the record.

## D. Testimony Regarding Addiction

At trial, McChristian offered the testimony of a Dr. Terrell that McChristian was a drug addict. Terrell's opinion was based on his interview with McChristian and investigative reports submitted to Terrell by defense counsel. Terrell also examined a videotape of the "reverse sting" police used to snare McChristian and Ingram. Terrell did not have McChristian's past medical records. On cross, the district court allowed the prosecutor to elicit a statement from Terrell that drug addicts may participate in drug conspiracies but are generally relegated to minor roles such as sampling or carrying drugs.

McChristian argues that this last testimony was improper. In support, McChristian cites to numerous cases holding that evidence that a particular defendant fits a drug courier profile is inadmissible to show the defendant's guilt or innocence, *e.g., United States v. Lui,* 941 F.2d 844, 847 (9th Cir.1991).

McChristian also argues that Terrell's testimony fits within none of the exceptions to "no-profile" rule. *E.g., United States v. Gomez–Norena,* 908 F.2d 497, 501 (9th Cir.) (background material exception), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990); *United States v. White,* 890 F.2d 1012, 1014 (8th Cir.1989) (modus operandi exception), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990); *United States v. Beltran–Rios,* 878 F.2d 1208, 1212 (9th Cir.1989) (allowing drug courier profile evidence in rebuttal). McChristian contends Terrell in effect testified that, because McChristian fit the "profile" of an addict in a drug conspiracy, he was part of the conspiracy.

■ We reject McChristian's arguments. Evidentiary rulings are reviewed for abuse of discretion. *United States v. Catabran,* 836 F.2d 453, 456 (9th Cir.1988). Terrell did not mention drug courier profiles. No evidence shows he was qualified to testify as to drug courier profiles. Nor was Terrell asked whether drug addiction is a characteristic of a drug courier. Instead, he was asked the inverse: whether a drug addict could carry drugs or otherwise function in a drug conspiracy. Thus, the cited "no-profile" cases are inapposite.

■ Moreover, the prosecutor's question was not intended to show McChristian's guilt or innocence; rather, it was intended to preclude any argument by McChristian that he was innocent because he was a drug addict. McChristian admits that his "entire defense was based ... on the argument ... that he was [present at the drug transaction] as a dependent drug addict hoping for some scraps of drugs to fall from the conspirator's drug table and not ... as a participant to or in the negotiation for purchase of drugs." Terrell was brought to testify in support of this defense. The prosecutor's question aimed to elicit testimony that McChristian had the capacity to participate in a drug

---

**2.** *Lennick* did not specifically address the argument that the rights Ingram asserts are guaranteed by the Fifth and Sixth Amendments. However, *Lennick*'s analysis and its citations to cases that discuss constitutional issues (*i.e., Breese v. United States,* 226 U.S. 1, 10, 33 S.Ct. 1, 2–3, 57

L.Ed. 97 (1912) (indicating that the right to have the indictment presented by the grand jury as a body is not protected by the Fifth Amendment)) persuade us that the rights Ingram asserts are subject to harmless error analysis even if they are protected by the Constitution.

conspiracy even though an addict. The question was related to Terrell's testimony on direct and went to the heart of McChristian's defense. For these reasons, Terrell's testimony was admissible.

### E. Vouching

On cross-examination of Ms. Farler, a prosecution witness, Mr. Ingram's counsel elicited testimony from Ms. Farler that the prosecution had threatened to prosecute her for perjury if she did not tell the truth on the stand. On recross, Mr. Elia, McChristian's counsel, elicited testimony that Ms. Farler felt intimidated and scared about the notion that she could be prosecuted and that the prosecutor had evidence that would indicate whether she was lying. Mr. Elia stated as follows in closing argument: "Now, ... granted, she didn't want to testify against Mr. Ingram and it was obvious to me that she had been intimidated and scared to the point where she did come in here."

In closing argument, the prosecutor responded:

Mr. Elia says that somehow I intimidated Miss Farler. Did you get that from Miss Farler? If I intimidated Miss Farler or if I intimidated any witness, I indicate to you it's not my intention to intimidate anyone. But it is my responsibility, and I take it very seriously in representing my client, the United States, that I will not allow perjured testimony from the stand, whether that comes from Miss Farler or from any witness here. I called witnesses and everyone—I have told you that we live and we die by the truth in here.

McChristian and Ingram contend that this statement constitutes improper vouching for the testimony of Ms. Farler and other prosecution witnesses. "It is improper for the prosecution to vouch for the credibility of a government witness. Vouching may occur [when] ... the prosecution ... place[s] the prestige of the government behind the witness...." *United States v. Roberts,* 618 F.2d 530, 533 (9th Cir.1980). Further, "a prosecutor may not express ... his belief in the credibility of witnesses...." *United States v. McKoy,* 771 F.2d 1207, 1211 (9th Cir.1985). McChristian claims the prosecu-

tion vouched for witnesses by referring to the United States and indicating he would live or die by the truth. McChristian claims this error was not harmless, though he does not identify the particular harm done.

■ We find the prosecutor's comment to be a fair response to the defense's closing argument. Neither defendant made any objection to it. Therefore, the propriety of the statement is reviewed for plain error. *United States v. Young,* 470 U.S. 1, 6, 14–20, 105 S.Ct. 1038, 1041–42, 1045–49, 84 L.Ed.2d 1 (1985). Reversal for plain error is reserved for situations in which "a miscarriage of justice would otherwise result." *Id.* at 15, 105 S.Ct. at 1046 (internal quotations omitted). No miscarriage of justice has occurred here. The prosecutor's reference to the United States was but a minor part of a rebuttal to Mr. Elia's suggestion that the prosecutor somehow intimidated Ms. Farler into testifying. The prosecutor was merely explaining that the zealous representation of his client required him to inform Ms. Farler that she could be prosecuted for perjury if she did not testify truthfully. The reference to the United States did not throw the "prestige of the government behind the witness." *Roberts,* 618 F.2d at 533. The comment that "we live and we die by the truth in here" is likewise fair. The statement that trial is about getting to the truth is little different from telling the jury that they must decide what the facts are.

■ Alternatively, these statements were harmless under *Young. See* 470 U.S. at 4–5, 12–20, 105 S.Ct. at 1040–41, 1044–49 (allowing remarks quite similar to those at issue here, because they were made in response to defense counsel's statements that the prosecution had tried to "poison [the jurors'] minds unfairly" through "reprehensible" conduct and that the prosecution did not believe its own case). The prosecutor's remarks were invited by Mr. Elia's arguments. Mr. Elia, who cross-examined Ms. Farler at length, stated in his closing argument, "I haven't tried to mislead you in any way in my cross-examination of the witnesses...." Mr. Elia also said, "I'm not trying to pull any fast one over on you." After these statements, the prosecutor was at least partly justified in

saying that he had not tried to mislead anyone, either. Any error that occurred did not result in a miscarriage of justice.

### F. Evidence of Addiction

■ McChristian did not testify. In closing argument, the prosecutor stated:

What evidence, what evidence have you heard that's credible that Mr. McChristian is an addict? Think about that. What evidence have you heard? Do you have the medical records? What you heard was the testimony of a doctor. Dr. Terrell.....

. . . .

McChristian knows that his attorney is sending this doctor over for one purpose, to come and testify for him. So what is he going to do? He's going to give self-serving statements. Do we have any evidence that he's an addict? No.

McChristian contends that the underlined portions of these statements constituted improper comment on McChristian's failure to testify.

[T]he privilege against self-incrimination prohibits a prosecutor from commenting on a defendant's failure to testify. However, a prosecutor may properly comment upon a defendant's failure to present witnesses so long as it is not phrased to call attention to defendant's own failure to testify. The test is whether the comment is manifestly intended to call attention to the defendant's failure to testify, and is ... of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.

United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1988) (citations and internal quotations omitted).

McChristian argues that, because he is the best witness as to whether he is an addict, a comment on the failure to give evidence of addiction calls the jury's attention to the fact that McChristian did not testify. See Williams v. Lane, 826 F.2d 654, 665 (7th Cir.1987) (noting that a "no evidence" reference more likely refers to defendant's failure to testify when it is "highly unlikely that at least a portion of the testimony could have

been contradicted by anyone other than the defendant" (internal quotations omitted)). McChristian contends that the reference was not harmless because it went to the heart of his primary defense.

We are not persuaded. Because McChristian did not object to the prosecution's remarks, the district court's failure to act against them is reviewed for plain error. See Mitchell v. Goldsmith, 878 F.2d 319, 323–24 (9th Cir.1989). In Castillo, this court refused to find reversible error in the prosecutor's remark that the defense failed to produce evidence that Castillo resided in a certain apartment. "[W]ouldn't the defense call the apartment manager?" the prosecutor asked. 866 F.2d at 1083. This court held that such a comment did not constitute reversible error even though it was objected to at trial.

In United States v. Lopez, 803 F.2d 969 (9th Cir.1986), cert. denied, 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987), the prosecutor "referred to the lack of any evidence showing that appellants tried to disassociate themselves from" another witness. This court held such reference not to be plain error. 803 F.2d at 973. In this case, the prosecutor's comments were made to call attention to the lack of medical records or other credible evidence beyond McChristian's self-serving statements to Terrell. The prosecutor had cross-examined Terrell on that basis. The prosecutor's comments in this case are most like those in Castillo and Lopez. Thus, no plain error is shown.

### G. Other of the Prosecutor's Closing Arguments

■ Both Ingram and McChristian claim that the prosecutor made numerous other unfair closing arguments. They contend that all of these arguments were unfair attacks on defense counsel and were intended to inflame the jury.

"[I]n fashioning closing arguments, prosecutors are allowed reasonably wide latitude and are free to argue reasonable inferences from the evidence." United States v. Enriquez–Estrada, 999 F.2d 1355, 1361 (9th Cir. 1993) (citations and internal quotations omitted). "Ordinarily[,] cautionary instructions"

or other "prompt and effective action[s] by the trial court" are "sufficient to cure the effects of improper comments." *Id.* (internal quotations omitted). Juries "are presumed to follow such cautionary instructions." *Id.* In this case, the district court instructed the jury thoroughly that comments of counsel during closing arguments are not evidence and that the jury was to decide the facts.[3]

"[P]rosecutorial misconduct invites reversal if it appears more probable than not that the alleged misconduct affected the jury's verdict." *Id.* (internal quotations omitted); *United States v. Christophe*, 833 F.2d 1296, 1301 (9th Cir.1987) (holding reversal justified only when misconduct "denies the defendant a fair trial" by "materially affect[ing] the verdict"). Nonetheless, "the district judge's view of the context ... is highly relevant. The district judge is in a much better position to evaluate the prosecutor's conduct and its impact. This court properly accords considerable deference to the trial court's view of such matters." *United States v. Sanchez–Robles*, 927 F.2d 1070, 1077 (9th Cir.1991) (internal quotations omitted). Moreover, that a prosecutor's remarks were made in response to defense counsel's arguments, as an "invited reply," may justify the remarks. *Young*, 470 U.S. at 14–20, 105 S.Ct. at 1045–49; *United States v. Tham*, 665 F.2d 855, 861–62 (9th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982).

Further, the presence of a factually strong case against a defendant runs contrary to the notion that improper remarks by the prosecutor materially affected the verdict. *See Hall v. Whitley*, 935 F.2d 164, 165–66 (9th Cir.1991). This factor is important in this case, in which evidence of the defendants' guilt is strong. Ingram admitted to the jury that he paid $20,000 for the methamphet-

amine and that he had a scale so that he could weigh drugs. He admitted that he had been involved in several drug deals before. McChristian was videotaped entering a room and asking Mr. Daggett, the confidential informant, where the "dope" was and trying to set up a smaller deal when the original deal fell through. Both Ingram and McChristian took active roles (and were videotaped) at the final negotiation. Both handled the methamphetamine on videotape and discussed how they planned to take a sample and test it. McChristian carried a sample out of the room.

Appellants have objected to many comments made by the prosecutor. We have examined them separately and cumulatively. We reviewed most of them (the ones unobjected to at trial), for plain error. *Young*, 470 U.S. at 14–20, 105 S.Ct. at 1044–49. We reviewed the three statements to which the defense did object at trial under the harmless error standard. *United States v. Endicott*, 803 F.2d 506, 513 (9th Cir.1986). Although we believe both counsel behaved objectionably at trial, we do not find reversible error because: 1) The jury was carefully, thoroughly and repeatedly instructed that counsel's argument is not evidence; 2) The evidence of guilt was overwhelming; and 3) Defendant's argument invited most if not all of the objectionable comments.

## CONCLUSION

For the foregoing reasons, we AFFIRM in all respects with regard to McChristian. We AFFIRM Ingram's conviction, but VACATE his sentence and REMAND for resentencing.

HALL, Circuit Judge, dissenting in part in *United States v. Ingram*, No. 92–10704:

I join in all but Part A of the majority opinion. I believe that Part A misconstrues

---

3. The district court instructed the jury as follows: Those things which are not evidence and you may not consider in deciding what the facts are are as follows: Arguments and statements by the lawyers are not evidence. The lawyers were not witnesses. What they have said in opening statements, what they will say in their closing arguments and at other times during the trial is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory controls.

Questions and objections by the lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objections that were made or by the Court's ruling on the objections except as I instructed you.
....
.... Your determination must be made only from the evidence in the case.
The trial court also stated at other times, "[W]hat the lawyers say is not evidence."

an unambiguous statutory provision. I therefore respectfully dissent from the disposition vacating Ingram's sentence.

The majority holds that the prohibition in 21 U.S.C. § 851(e) against collateral attacks on prior convictions that are more than five years old does not preclude Ingram from showing that his 1982 conviction had been vacated at the time of his federal sentencing, ten years later. I believe, however, that § 851(e) does in fact bar Ingram's challenge and that his sentence should be affirmed.

Ingram was convicted of conspiracy to distribute methamphetamine, 21 U.S.C. § 846, and possessing the same drug with intent to distribute, 21 U.S.C. § 841(a)(1). Based upon his prior convictions, Ingram was sentenced to life without parole under the enhanced sentencing provision of 21 U.S.C. § 841(b). He claims that the district court erred in refusing to entertain a collateral challenge to one of his prior convictions.

One of the convictions alleged by the government and relied upon by the district court in sentencing Ingram occurred in California state court in 1982. After Ingram was indicted in federal court and became aware that the government would attempt to rely on the 1982 conviction, he went back to the state trial court and moved that his case be reopened and his conviction stricken. The state court reopened the case on July 7, 1992, and granted Ingram's motion to strike the prior conviction.

Thus, at the time Ingram was sentenced in federal court, in October 1992, the 1982 conviction had been vacated by the court of conviction. The district court, however, declined to consider this fact. While 21 U.S.C. § 851(c) does provide a mechanism for collateral challenges to prior convictions used to enhance federal sentences under § 841(b), the court held that 21 U.S.C. § 851(e) barred Ingram's argument in this case.

Section 851(e) provides that "[n]o person who stands convicted of an offense under [§§ 841 or 846] may challenge the validity of any prior conviction alleged under [§ 851] which occurred more than five years before the date of the information alleging such prior conviction." The district court found

that this provision precluded Ingram from showing that the 1982 conviction had been vacated. The majority concludes to the contrary that "§ 851(e) does not preclude Ingram from showing the court that the conviction has been invalidated." Majority Opinion at 1502–03. Because the plain language of § 851(e) prohibits "challenges to the validity" of convictions that are more than five years old, I cannot agree that it permits a showing that the conviction has been "invalidated."

The majority finds that Ingram's attempt to prove to the district court that the 1982 conviction had been vacated was not a "challenge [to] the validity" of the prior conviction, within the meaning of § 851(e). Since the gist of Ingram's contention is that the 1982 conviction was not "valid" for purposes of enhancing his sentence under § 841(b), this argument runs counter to the plain language of the statute. While Ingram did not demand a full evidentiary hearing under § 851(c) to examine the constitutionality of the proceedings leading to his 1982 conviction, he quite clearly tried to challenge its "validity," in the common sense meaning of the term, by showing that it had been vacated by the state court.

In essence, Ingram's argument must be that Congress did not intend to include a showing that a prior conviction had been vacated, expunged, or nullified in some similar manner, among the collateral challenges otherwise precluded by § 851(e). I do not believe, however, that the statute supports this interpretation.

The reasoning employed by the Supreme Court in *Custis v. United States*, —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), is instructive. Before reaching the question whether defendants have a constitutional right to challenge the validity of convictions relied on to enhance sentences, the Court held as a matter of statutory construction that the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), does not permit such challenges. The Court first noted that the ACCA does not explicitly allow for collateral challenges to prior convictions. —— U.S. at —— – ——, 114 S.Ct. at 1735–36. The Court then refused to *imply* such a right, in part through comparison of

the ACCA to 21 U.S.C. § 851(c), which specifically allows for collateral attacks to convictions used to enhance under § 841. The Court stated that:

> [t]he language of § 851(c) shows that when Congress intended to authorize collateral attacks on prior convictions at the time of sentencing, it knew how to do so. Congress' omission of similar language in [the ACCA] indicates that it did not intend to give defendants the right to challenge the validity of prior convictions under this statute.

*Id.* at ——, 114 S.Ct. at 1736 (citing *Gozlon–Peretz v. United States*, 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991)).

This same reasoning supports the conclusion that § 851(e) precludes *all challenges* to prior convictions which are more than five years old, including a showing that the conviction has been vacated. Under the ACCA, Congress specifically provided that a prior conviction cannot be used to enhance a sentence if the prior has been vacated by the state court:

> What constitutes a conviction of ... a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter.

18 U.S.C. § 921(a)(20). Similarly, the criminal history and career offender provisions of the Sentencing Guidelines specifically provide that expunged, vacated, or invalidated convictions are not to be used in computing the defendant's criminal history category or determining if the defendant has suffered two prior felony convictions which trigger enhanced sentencing under § 4B1.1. *See* U.S.S.G. §§ 4A1.1, comment. (n.2) (1994); *id.* (n.3); § 4A1.2(j); *id.* comment. (n.6); § 4B1.2, comment (n.4). Thus, for purposes of determining both criminal history and career offender status, the Guidelines provide that

> [s]entences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted.

*Id.* § 4A1.2, comment. (n. 6).

These provisions indicate that when Congress (acting through the Sentencing Commission, in the case of the Guidelines) wishes to preclude courts from considering convictions which have been vacated, "it [knows] how to do so." *Custis*, —— U.S. at ——, 114 S.Ct. at 1736. The omission of similar language from § 851 "creates a clear negative implication," *id.*, that there is no implicit exception to § 851(e)'s prohibition on challenges to stale convictions for convictions which have been vacated.

Arguably, this construction of § 851(e) could bring the state and federal systems into conflict, if federal courts are frequently obliged to enhance federal sentences on the basis of state convictions which have been reversed or expunged. As a matter of comity, this result may not be ideal. As a matter of Ninth Circuit law, however, it is not problematic. *See, e.g., United States v. Bergeman*, 592 F.2d 533, 535–38 (9th Cir.1979) (criminal conviction dismissed pursuant to Idaho state expunction statute may be used to enhance federal sentence); *Hyland v. Fukuda*, 580 F.2d 977, 981 (9th Cir.1978) ("[a]lthough the [state] expunction statute could determine the status of the conviction for purposes of state law, it could not 'rewrite history' for the purposes of 'the administration of the federal criminal law ...'") (citation omitted); *United States v. Tallmadge*, 829 F.2d 767, 782 (9th Cir.1987) (Kozinski, J., dissenting) (acknowledging that "the policies of the [state and federal] governments are at loggerheads" and suggesting that "Congress may wish to consider whether individuals whose state convictions are expunged, sealed, pardoned or retroactively reduced under state law ought not, as a matter of comity and leniency, be given the same grace under federal law," but asserting that judges "have the uncomfortable duty of affirming" sentences in such cases and "normally discharge that duty, distasteful though it may be").

Just as the majority relies on *Williams v. United States,* 651 F.2d 648 (9th Cir.1981), to support its holding, I believe that case can be read to support my contrary conclusion. In a sense, the judgment which Ingram obtained in state court, vacating his 1982 conviction, was not "final" at the time he was sentenced in federal court. *Williams* held that a state conviction still on direct appeal should not be used for enhancement out of concern for the "orderly administration of justice," *id.* at 650, and the "possib[ility of] conflicting results [between state and federal court decisions], with all their attendant complications and embarrassments," *id.* (quoting *United States v. Allen,* 566 F.2d 1193, 1196 (3d Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978)). The same concerns suggest that a federal court should not get in the middle of state collateral litigation over the validity of a 10–year–old conviction.

The facts of this case underscore this problem. After Ingram's federal sentencing, a California appellate court reversed the order vacating the 1982 conviction. Thus, as far as we currently know, the 1982 conviction has been reinstated and could properly be relied on to enhance a federal sentence today. Regardless of the ultimate outcome of Ingram's state court collateral attack, I believe that § 851(e) was intended to prevent federal courts from being subject to the vagaries of such proceedings to reopen stale convictions.

A holding that § 851(e) precludes Ingram from showing that the 1982 conviction had been vacated would necessarily raise the question whether this result is constitutional. I think that *Custis* decisively answers this question in the affirmative.

On the basis of these statutory and constitutional holdings, I would affirm Ingram's sentence. I therefore respectfully dissent.