UNITED STATES of America,

v.

Matthew ZIMMERMAN, Appellant.

No. 00–2218.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) Sept. 15, 2003.

Decided Sept. 30, 2003.

Before: ALITO, AMBRO and CHERTOFF, Circuit Judges.

## OPINION

CHERTOFF, Circuit Judge.

Matthew Zimmerman appeals his conviction and sentence for conspiring to distribute cocaine and related charges. On May 30, 2000, a jury found Zimmerman guilty of conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 (Count 4); and possession with intent to distribute cocaine within 1000 feet of a school in violation of 21 U.S.C. § 860 and 18 U.S.C. § 2 (Count 5).[1] Although the District Court determined that Zimmerman was subject to a Sentencing Guideline range of 262 to 327 months in prison, he was sentenced only to 235 months imprisonment.[2]

Zimmerman challenges his conviction and appeals on a number of bases. First, he argues that the District Court's conclusion as to the applicable maximum sen-

---

1. Count 4 was ultimately dismissed on motion by the Government.

2. Zimmerman's sentence was reduced when the District Court granted his motion for a downward departure under *United States v.* *Shoupe,* 35 F.3d 835 (3d Cir.1994), on the theory that the Government's sentencing recommendation had overstated Zimmerman's criminal history.

tence was erroneous because neither drug identity nor drug quantity was submitted to the jury as required by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Second, Zimmerman contends that the District Court incorrectly concluded that he was a "second offender" and thus subject to the enhanced sentencing provisions of 21 U.S.C. §§ 841(b) and 860. Third, he challenges the District Court's refusal to grant his motions for a new trial or judgment of acquittal. Finally, he attacks the sufficiency of the evidence on which his conviction was based.

As to Zimmerman's first two contentions, we find that the actual sentence imposed by the District Court is supported by the jury verdict as to drug identity, and is less than the statutory maximum that would apply without the other challenged enhancements. The sentence imposed, therefore, does not violate *Apprendi* and it is not otherwise improper. As to Zimmerman's last two contentions, we find both that there existed sufficient evidence to support Zimmerman's convictions and that the motions made below were properly denied. We will affirm.

The relevant facts, taken in the light most favorable to the Government, may be summarized as follows: [3] On November 17, 1999, Zimmerman and co-conspirator Robert Sanchez met with Yancy Laureano in a furniture store owned by Richard Knellinger to discuss a cocaine transaction. The co-conspirators were unaware that both Laureano and Knellinger were working for the Drug Enforcement Agency ("DEA") as confidential sources. During this meeting, Sanchez showed Laureano a sample of cocaine in a small plastic bag that he had been given by Zimmerman earlier that day.[4] During the meeting, a smaller sample was broken off this larger sample and given to Laureano. Laureano and the co-conspirators agreed that Zimmerman and Sanchez would obtain a kilogram of cocaine from Resto and sell it to Laureano. The DEA later tested the drug sample furnished to Laureano and found it to be cocaine.

Zimmerman and Sanchez, who had told Laureano that Zimmerman could obtain the cocaine within fifteen minutes, went immediately to Resto's place of employment and met with Resto to obtain the cocaine. They were unsuccessful. During the course of the following day, the co-conspirators and Laureano communicated with each other in an effort to move the transaction forward, finally agreeing that the co-conspirators would page Laureano once they obtained the cocaine. The co-conspirators then went to Resto's house where Zimmerman got the cocaine from Resto and returned to join Sanchez in the car. In the car, Zimmerman showed the cocaine to Sanchez. Resto dispatched his friend Colon to oversee the transaction.

The entourage, with Colon following in a separate car, traveled back to the furniture store in an attempt to consummate the cocaine transaction. Laureano, however, was nowhere to be found. While leaving the scene, the co-conspirators encountered DEA agents. Zimmerman crashed into one agent with his car, and then eluded the

**3.** The evidence at trial included the testimony of one of Zimmerman's co-conspirators, the testimony of a Drug Enforcement Agency confidential informant, tape recorded conversations featuring Zimmerman negotiating the transaction forming the object of the conspiracy, and Zimmerman's own trial testimony. In addition, the Government presented corroborating evidence in the form of DEA surveillance and the fact that Zimmerman fled when confronted by DEA agents.

**4.** Zimmerman had told Sanchez that he, Zimmerman, had gotten the cocaine sample from his supplier, known as Resto or "Ace."

other agents after a high-speed chase. Zimmerman turned himself in the next day.[5]

On January 25, 2002, the District Court imposed sentence. During a lengthy sentencing colloquy, the District Court found the quantity of cocaine to be one kilogram. The District Judge, in setting the sentence, then considered both the amount of cocaine involved and the fact that Zimmerman had a 1994 state court drug conviction. In doing so, the District Court looked to 21 U.S.C. §§ 841(b)(1)(C) and 846 to establish the maximum penalty, and to sections 841(b)(1)(B) and 846 to establish the minimum.[6] Thus, with respect to Count 1, the District Court determined the maximum sentence under section 846 to be thirty years and the minimum sentence to be ten years. With respect to Count 5, the District Court, under section 860(a), doubled the maximum sentence prescribed by section 841(b)(1)(C) to sixty years and also found a ten year mandatory minimum. Significantly, the District Court noted that the question of a mandatory minimum was largely "irrelevant," given the calculated guideline range of 262 to 327 months. Finally, the District Court granted Zimmerman's request for a downward departure and imposed concurrent sentences of 235 months imprisonment on both Counts 1 and 5. This timely appeal followed.

## I.

Zimmerman first contends that the District Court's sentence was in error because neither drug identity nor drug quantity was submitted to the jury as required by

Apprendi. We must at the outset determine whether drug identity or quantity were, in fact, submitted to the jury and, if not, whether the failure to submit them was error in light of the sentence imposed in this case. This Court exercises plenary review over both the accuracy of a District Court's statement of a legal standard in jury instructions and a District Court's legal conclusions regarding applicable statutory penalties. *Savarese v. Agriss,* 883 F.2d 1194, 1202 (3d Cir.1989); *United States v. Robinson,* 167 F.3d 824, 830 (3d Cir.1999).

### A. *Drug Identity*

■ *Apprendi* mandates that any fact (other than a prior conviction) that increases a defendant's sentence beyond the otherwise applicable statutory maximum be charged in the indictment and proved beyond a reasonable doubt. *See, e.g., United States v. Gori,* 324 F.3d 234, 237 (3d Cir. 2003). In *United States v. Barbosa,* 271 F.3d 438, 456–57 (3d Cir.2001), we applied *Apprendi* and found that drug identity must be submitted to the jury if it affects the statutory maximum penalty. As Zimmerman correctly points out, he was sentenced under a penalty that applies to cocaine distribution.

Contrary to Zimmerman's claim, however, the District Court in this case did instruct the jury that it needed to find that the defendant conspired to distribute cocaine and possessed cocaine with intent to distribute. The jury instructions on Count 1 (conspiracy) stated the object of the alleged conspiracy as "possess[ion] with in-

---

**5.** Zimmerman stipulated that the places where the transactions were alleged to have occurred were within 1000 feet of one or more schools.

**6.** The District Court reasoned that in the absence of a jury findings of drug quantity, *Apprendi* required the lowest statutory maxi-

mum to be applied. The District Judge relied on his own finding of quantity for purposes of setting the statutory minimum, however. On appeal, Zimmerman does not challenge the decision to look to these two separate provisions for sentencing purposes.

tent to distribute more than 500 grams of cocaine. . . ." App. 951. The District Court also correctly charged the jury that the Government was required to prove an "understanding to commit the offense as described in the indictment. . . ." App. 954. Zimmerman does not complain about this conspiracy instruction.

On the substantive counts, including Count 5, the District Court charged the jury, in part, as follows:

> Now with reference to [the substantive drug charges] you are instructed as a matter of law that cocaine is a controlled substance. *It is solely for you to determine whether or not the Government has proven beyond a reasonable doubt that the defendant in these cases distributed or in the other charges possessed with intent to distribute a substance which is cocaine.* Cocaine is a controlled substance.
>
> . . .
>
> And finally, I want to point out to you that it is not necessary for the Government to prove that the defendant knew the precise nature of the controlled substance that was distributed or possessed with intent to distribute. The Government must prove beyond a reasonable doubt however, that the defendant did know that some type of controlled substance was distributed or possessed with the intent to distribute.

App. 961–62 (emphasis added).

Zimmerman argues that, notwithstanding the portion of these instructions submitting the question of drug identity to the jury, the latter paragraph nullified the first and therefore confused the jury with respect to whether the Government must prove that the controlled substance possessed by Zimmerman was, in fact, cocaine. We do not agree.

The earlier quoted paragraph of instructions to the jury concerns itself with drug identity. The latter, with intent. These are separate and distinct elements of the offense of possession with intent to distribute. We held *United States v. Barbosa,* 271 F.3d 438, 457–58 (3d Cir.2001), that a jury must determine the identity of the distributed controlled substance, but that it need not find that a defendant had knowledge of the specific identity of that substance. Rather, the defendant need only have known that the substance was controlled. Although this case was tried before we decided *Barbosa,* the District Court correctly anticipated the rule we adopted in that case. Accordingly, the question of drug identity was properly submitted to the jury.

### B. *Drug Quantity*

 That being so, the question of whether drug quantity was properly submitted to the jury becomes academic. The jury found, beyond a reasonable doubt, that the substance in this case was cocaine. The shortest maximum sentence applicable to a cocaine-related offense under section 841(b) is twenty years. *See* 21 U.S.C. § 841(b)(1)(C). This applies no matter how small the quantity of cocaine involved. The sentence actually imposed by the District Court here was one month lower than that maximum.

*Apprendi* only applies where the District Court imposes a sentence in excess of the otherwise applicable statutory maximum on the basis of a fact not found by a jury beyond a reasonable doubt. *Barbosa,* 371 F.3d at 457. Therefore, no *Apprendi* violation occurs where, as here, the sentence imposed does not exceed the otherwise applicable statutory maximum.[7]

---

**7.** Understandably, Zimmerman does *not* raise an *Apprendi* issue with respect to the District

Whether or not drug quantity was submitted to the jury, the sentence imposed by the District Court was within the lowest possible statutory maximum applicable to cocaine offenses under 21 U.S.C. § 841(b) and, therefore, proper.

## II.

■ The District Court concluded that, because Zimmerman had previously been convicted of a felony and a lesser-included misdemeanor in Pennsylvania State Court, Zimmerman was subject to sentencing exposure enhancement under 21 U.S.C. §§ 841(b)(1), 846 and 860. Thus, the District Court determined that the maximum sentence that could be imposed on Zimmerman was greater than the twenty years enumerated for first-time offenders in 21 U.S.C. § 841(b)(1). By the same token, the District Judge enhanced the minimum sentence under the same statute.

Zimmerman contends that his prior conviction amounted only to a misdemeanor, and was not an appropriate predicate for sentencing enhancement. He also invokes the rule of lenity, see *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), to argue that 21 U.S.C. § 851(e) does not preclude him from challenging the use of his 1994 state court convictions as a basis for enhancing his sentence.[8] According to Zimmerman, his state court convictions had not "occurred" as that term is used in 21 U.S.C. § 851(e) more than five years prior to the filing of the Second Offender Information because he retained a right to appeal, so that those state court convictions are not

"final" under state law. Alternatively, Zimmerman argues that 21 U.S.C. § 851 is unconstitutional as a violation of due process and equal protection. We need not reach any of these issues, however, because Zimmerman's sentence would fall within the proper statutory range, even if any of his arguments were correct.

The maximum sentence to which Zimmerman would have been subject under section 841(b)(1), without *any* second offender enhancement, was twenty years. The sentence imposed upon Zimmerman by the District Court was less than twenty years. The fact that the District Court determined Zimmerman was eligible for a sentence greater than the maximum for first-time offenders is of no moment because Zimmerman's actual sentence did not exceed the otherwise applicable unenhanced maximum. Further, Zimmerman does *not* contend on appeal that his guideline analysis would have differed had the District Court upheld his challenge to use of his state court convictions. Since any error had no effect on Zimmerman's actual sentence, we may disregard it under the approach we employed in *United States v. Napier*, 273 F.3d 276, 280 (3d Cir.2001).

The District Court also found that Zimmerman was subject to a mandatory minimum sentence under section 841(b)(1)(B). Further, the District Court enhanced the applicable mandatory minimum sentence from the five years that applies to first-time offenders to the ten years that applies to recidivists. Thus, the District Court did rely on Zimmerman's state court

---

Court's finding that a mandatory minimum sentence was applicable. Such an argument would not be tenable. *See Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

8. 21 U.S.C. § 851(e) provides:

No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.

convictions to raise his mandatory minimum sentence. But this finding, too, became legally irrelevant because both the Sentencing Guideline calculation and Zimmerman's actual sentence were well above even the ten year mandatory minimum that the District Court found to be applicable.

■ To be sure, in *United States v. Knight*, 266 F.3d 203 (3d Cir.2001), we held that a District Court's miscalculation of the applicable Sentencing Guidelines range presumptively affects substantial rights, even if the sentence actually imposed was within the correct guidelines range. We reasoned that the Sentencing Guidelines are intended to influence the discretionary sentencing process, so that when the point of departure is erroneous, the entire sentencing decision is infected. *Id.* at 207–208. But that decision does not govern here. *Knight* dealt with the harmful effect of a Sentencing Guidelines miscalculation; as we already noted, there is no contention in this appeal that Zimmerman's guidelines range was incorrectly calculated. Nor is it clear that the reasoning of *Knight* applies to evaluating an alleged mistake in setting the mandatory minimum

sentence, because a mandatory minimum sentence is not as much designed to influence sentencing as it is to set the limits within which judicial power to sentence may be exercised. *See Neal v. United States*, 516 U.S. 284, 291–92, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996). Finally, in *Knight* we were careful to note that a guidelines calculation error does not require a sentencing remand "where the record shows that the sentence was unaffected by the error." *Knight*, 266 F.3d at 208. Here, the District Judge explicitly stated that the imposition of mandatory minimum sentences was "irrelevant" to the sentence he actually imposed, given that the guidelines range vastly exceeded the minimum sentence. Accordingly, this is a case where we can be sure that the "sentence was unaffected by the error," and remand would, in any event, be unnecessary.[9]

## III.

Zimmerman contends that the District Court erred in dismissing three motions for either a new trial or for judgment of acquittal. One motion, made through his counsel, requested a new trial on the basis

---

9. Were we to reach Zimmerman's arguments, they would be unlikely to succeed. First, the state court record is clear that Zimmerman pled guilty to *both* misdemeanor and felony charges. Although Zimmerman correctly contends that the Pennsylvania merger doctrine prevents him from being convicted of both the greater and lesser included offenses, it does not follow that the greater offense should necessarily merge into the lesser. Most Pennsylvania cases merge the lesser offense into the greater, out of preference for a longer sentence. *See Commonwealth v. Everett*, 550 Pa. 312, 315, 705 A.2d 837 (1998). During the sentencing phase of Zimmerman's state court conviction, the prosecuting attorney, without objection, quoted Zimmerman's penalty ranges as being from "[s]ix to fifteen in the standard range; fifteen to twenty-one in the aggravated range; and three to six in the mitigated range." A. 1068. Given the

length of sentencing exposure, it seems clear that Zimmerman's sentencing was conducted under his conviction for the felony offense.

Second, even if Zimmerman's state court convictions were not fully appealed and not "final," as he contends, there is authority to suggest that the term "occurred" should be interpreted differently from the term "final." Many courts have used conviction date rather than final appeal date to calculate section 851(e) timing. *See, e.g., United States v. McChristian*, 47 F.3d 1499, 1502 (9th Cir. 1995); *United States v. Weaver*, 905 F.2d 1466, 1482 (11th Cir.1990). Finally, courts have found section 851(e) constitutional. *See, e.g., United States v. Prior*, 107 F.3d 654, 660–61 (8th Cir.1997) (collecting cases); *McChristian*, 47 F.3d at 1502; *United States v. Arango–Montoya*, 61 F.3d 1331, 1337–38 (7th Cir. 1995).

that the Government had failed to share *Brady* material. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This motion was disposed of by the District Court by an order dated June 21, 2002. The remaining two motions, filed *pro se,* requested a judgment of acquittal or a new trial on numerous bases.[10] The District Court disposed of the latter two motions raising these twelve issues by an order dated June 19, 2002. This Court reviews a denial of a motion for a new trial for an abuse of discretion, *United States v. Adams,* 759 F.2d 1099, 1108 (3d Cir.1985), and a District Court's denial of a motion for acquittal for sufficiency of the evidence, *United States v. Goldblatt,* 813 F.2d 619, 621–22 (3d Cir.1987).

We agree with the reasoning set forth in the District Judge's comprehensive opinions. We will, therefore, affirm the orders of June 21, 2001 and June 19, 2001.

## IV.

■ Finally, Zimmerman contends that the evidence adduced at trial was insufficient to convict him of the substantive crimes with which he was charged. When reviewing a jury verdict, this Court must view all evidence in the light most favorable to the prosecution and affirm the verdict if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence was entirely sufficient to support the jury's verdict.

The Government's proofs at trial included testimony of his co-conspirator Sanchez, recordings of conversations about drug transactions featuring Zimmerman's voice, and surveillances. Zimmerman also testified at trial. Although Zimmerman is correct to point out that the Government never presented proof of chemical testing of the substance that served the basis for the charges upon which Zimmerman was convicted, he is also correct to acknowledge that convictions under sections 846, 860 and 841(b) may be based, as here, on circumstantial evidence. The evidence at trial showed that both co-conspirators believed that the substance was cocaine. Further, the evidence showed that both co-conspirators had in the past provided DEA agents with a sample of a substance that

**10.** Zimmerman's motions asserted that: (1) the verdict is contrary to the weight of the evidence; (2) the District Court erred in denying a motion to dismiss all counts of the indictment; (3) the District Court erred in denying defendant's motion to sever his case from those of the other defendants; (4) the District Court committed plain error when it denied a motion to dismiss the entire jury panel because many panel members were closely related to law enforcement officers and government agents or agencies; (5) the District Court committed plain error in failing to instruct the jury that the Government must prove the charges against Zimmerman with two witnesses, or one witness with corroboration; (6) the District Court erred in refusing to instruct the jury that before co-conspirator statements could be attributed to the defendant, it must find that a conspiracy existed and that Zimmerman participated in it; (7)

the District Court erred in admitting, over defense objections, co-conspirator hearsay pursuant to Federal Rule of Evidence 801(d)(2)(E) before a conspiracy was shown; (8) the District Court erred in denying a defense motion for a mistrial after the testimony of DEA Agent Brown because he testified that Knellinger cooperated with the Government and was not involved in any drug activity; (9) the District Court erred in admitting unintelligible tape recordings; (10) the District Court erred in instructing the jury regarding co-conspirator vicarious liability where, as Zimmerman contends, there is not evidence that he remained in a conspiracy after November 17, 1999, if any conspiracy existed at all; (11) the District Court erred in permitting, over defense objection, the jury to take transcripts and secondary evidence into the jury room; and (12) the cumulative effect of all of these errors denied Zimmerman due process.

was later tested and shown to be cocaine. Indeed, the co-conspirators had obtained the earlier, definitively cocaine sample from the same dealer (Resto) from whom they obtained the substance that served as the basis for the instant charges. This evidence is more than sufficient to allow a reasonable jury to conclude that the substance was cocaine.

## V.

For the foregoing reasons, the judgment of the District Court will be AFFIRMED.